**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARSHALL PULLIAM, PARSHOO BADLU, and SEAN ROBINSON, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

TRANS EXPRESS, INC.; NATIONAL EXPRESS LLC; and NATIONAL EXPRESS TRANSIT CORPORATION,

Defendants.

**Civil Action No. 1:19-cv-4038**

**Hon. Judge Ramon E. Reyes, Jr.**

# MEMORANDUM OF LAW OF CHRISTOPHER Q. DAVIS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................................................................ 1

I. LITIGATION HISTORY ........................................................................................ 2

A. Factual and Procedural History ........................................................................ 2

B. Overview of Investigation and Discovery ........................................................ 5

C. Settlement Negotiations ...................................................................................... 7

D. Plaintiffs' Unopposed Motion for Preliminary Approval ................................ 9

E. Defendants Complied With The Class Action Fairness Act (CAFA) Notice Requirements ........................................................................................ 10

F. Summary of the Notice and Claims Administration Process ........................ 10

II. OVERVIEW OF THE SETTLEMENT TERMS ................................................ 12

A. The Settlement Fund ........................................................................................ 12

B. Releases ............................................................................................................ 13

C. Settlement Allocation ........................................................................................ 14

D. Attorneys' Fees and Costs ................................................................................ 16

E. Enhancement Awards ........................................................................................ 16

III. PLAINTIFFS SUBMIT THAT THE RULE 23 SETTLEMENT CLASS MEETS THE LEGAL STANDARD FOR CLASS CERTIFICATION ........................................ 17

A. Numerosity ........................................................................................................ 18

B. Commonality ...................................................................................................... 18

C. Typicality .......................................................................................................... 19

D. Adequacy of the Named Plaintiffs and the Class Counsel .............................. 19

E. Certification is Proper Under Rule 23(b)(3) .................................................... 20

i. Common Questions Predominate ............ 21

ii. Class Action is a Superior Mechanism ............ 22

IV. FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(E) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ............ 23

A. The Proposed Settlement is Procedurally Fair ............ 23

B. The Proposed Settlement is Substantively Fair ............ 24

i. Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1) ............ 25

ii. The Reaction of the Class (Grinnell Factor 2) ............ 25

iii. Plaintiffs and Their Counsel Have Sufficient Information to Resolve the Case Responsibly (Grinnell Factor 3) ............ 26

iv. Plaintiffs Would Face Real Risks If the Case Proceeded (Grinnell Factors 4 and 5) ............ 27

v. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6) ............ 28

vi. Defendants' Ability to Withstand a Greater Judgment Is Not at Issue (Grinnell Factor 7) ............ 30

vii. The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9) ............ 31

CONCLUSION ............ 32

**TABLE OF AUTHORITIES**


**CASES** **PAGES(S)**

*Abel v. S. Shuttle Servs., Inc.*,
631 F.3d 1210 (11th Cir. 2011) ........ 8

*Adoma v. Univ. of Phx., Inc.*,
913 F. Supp. 2d 964 (E.D. Cal. 2012) ........ 10

*Ahmad v. Daniyal Enterprises, LLC*,
No. 2:14-CV-1142 2015 WL 6872481 (D.N.J. Nov. 9, 2015) ........ 30

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 21, 22

*Calderon v. King Umberto, Inc.*,
892 F. Supp. 2d 456 (E.D.N.Y. 2012) ........ 29

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........ 2, 23, 24

*Clark v. Ecolab Inc.*,
07-cv-8623-PAC, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ........ 20

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ........ 18

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) ........ 21

*Cotter v. Lyft, Inc.*,
No. 13-04065, 2017 WL 1033527 (N.D. Cal. Mar. 16, 2017) ........ 13

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ........ 23, 24, 25

*Damassia v. Duane Reade*,
250 F.R.D. 152, 164 (S.D.N.Y. 2008). ........ 23

*Damassia v. Duane Reade, Inc.*,
No. 04 Civ. 8819, No. 06 Civ. 2295, 2009 WL 5841128 (S.D.N.Y. July 27, 2009) ........ 17

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ........ 20

*Diaz v. Eastern Locating Service Inc.*,

10-cv-4082, 2010 WL 2945556 (S.D.N.Y. July 22, 2010)........................................................ 20

*Dziennik v. Sealift, Inc.*,
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)................................................ 20

*Edwards v. Publishers Circulation Fulfillment, Inc.*,
268 F.R.D. 181 (S.D.N.Y. 2010) ............................................................................................ 30

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)................................................................... 13, 19, 31, 33

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)................................................................................................................ 18

*Goldberger v. Integrated Res., Inc.*,
209 F. 3d 43 (2d Cir. 2000)....................................................................................................... 2

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968).................................................................................................... 22

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................................... 26

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................... 25, 26, 27, 31, 32

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990) ............................................................................................. 2

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................................. 24

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124, 139 (2d Cir. 2001)............................................................................................. 22

*Jakosalem v. Air Serv Corp.*,
No. 13-cv-05944-SI, 2015 U.S. Dist. LEXIS 117235 (N.D. Cal. Sep. 2, 2015) ......................... 10

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ...................................................................... 33

*Keeler v. AIG Domestic Claims, Inc.*,
Case No. B226691, 2011 WL 6318485 (Cal. Ct. Appeal Dec. 19, 2011) .................................. 13

*Khait v. Whirlpool Corp.*,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)................................................ 23

*Kuncl v. Int'l Bus. Machines Corp.*,
660 F. Supp. 2d 1246 (N.D. Okla. 2009) ........ 13

*Walsh, Secretary of Labor, United States Department of Labor v. Trans Express, Inc.*,
Case No. 19-CV-1423 ........ 3, 13, 15

*Landi v. Trans Express Inc., et al*,
Case No. 190-CV-02715 ........ 4, 15, 23

*Lipnicki v. Meritage Homes Corp.*,
No. 3:10–cv–605, 2014 WL 923524 (S.D. Tex. Feb. 13, 2014) ........ 13

*Lockridge v. Trans Express Inc.*
(No: 1:18-cv-3774) ........ 23

*Marisol A.*,
126 F.3d 372 (2d Cir. 1997) ........ 19

*Marriott v. County of Montgomery*,
227 F.R.D. 159 (N.D.N.Y. 2005) ........ 21

*Metrow v. Liberty Mutual Managed Care, LLC*,
2018 WL 6265085 (C.D. Cal. June 14, 2018) ........ 10

*Morris v. McComb*,
332 U.S. 422 (1947) ........ 7, 28

*Myers v. Hertz Corp*.,
No. 02-CV-4325, 2007 WL 2126264 (E.D.N.Y. July 24, 2007) ........ 30

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ........ 32

*Noble v. 93 University Place Corp.*,
224 F.R.D. 330 (S.D.N.Y. 2004) ........ 20

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ........ 21

*Perez v. Allstate Ins. Co.*,
11-cv-1812, 2014 WL 4635745 (E.D.N.Y. 2014) ........ 30

*Pliego v. Los Arcos Mexican Restaurants, Inc.*,
313 F.R.D. 117 (D. Colo. 2016) ........ 13

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. Of N.Y. & N.J.*,

698 F.2d 150 (2d Cir. 1983) .......... 19

*Resch v. Krapf's Coaches, Inc.*,
785 F.3d 869 (3d Cir. 2015) .......... 8

*Richardson v. Wells Fargo Bank, N.A.*,
839 F.3d 442 (5th Cir. 2016) .......... 13

*Sakiko Fujiwara v. Sushi Yasuda, Ltd.*,
58 F. Supp. 3d 424 (S.D.N.Y. 2014) .......... 26

*Seagoing Unif. Corp. v. Texaco, Inc.*,
No. 84 CIV. 1730, 1989 WL 129691 (S.D.N.Y. Oct. 24, 1989) .......... 2

*Spicer v. Pier Sixty, LLC*,
269 F.R.D. 321 (S.D.N.Y 2010) .......... 20

*Stephens v. Farmers Restaurant Group*,
Case No. 2019 WL 2550674 (D.D.C. June 20, 2019) .......... 13

*Thomas v. Magnachip Semiconductor Corp.*,
2017 U.S. Dist. LEXIS 189971 (N.D. Cal. Nov. 16, 2017) .......... 10

*Toure v. Cent. Parking Sys. of N.Y.*,
No. 05-cv-5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .......... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .......... 23, 24

*Walters v. Am. Coach Lines Of Miami, Inc.*,
575 F.3d 1221 (11th Cir. 2009) .......... 8

*Warfarin*,
391 F.3d at 537 .......... 26

*Williams v. Trans Express Inc.*,
Case No. 19-CV-1857 .......... 4, 15, 23

**STATUTES**

29 CFR § 782 .......... 8

29 U.S.C. § 201 *et seq.* .......... 3

29 U.S.C. § 213(b)(1) .......... 7

29 U.S.C. § 216(c) .......... 28

Fed. R. Civ. P. 4(a)(1)(A) ........ 15

Fed. R. Civ. P. 23 ........ 16, 18, 19, 20, 21, 22, 23,

Fed. R. Civ. P. 54(d)(2) ........ 16

**PRELIMINARY STATEMENT**

Named Plaintiffs Marshall Pulliam, Parshoo Badlu and Sean Robinson (collectively, the "Named Plaintiffs") and the Rule 23 Class (together with the Named Plaintiffs referred to herein as the "Plaintiffs") respectfully request that this Court grant final approval of the settlement set forth in the Settlement Agreement (the "Settlement" or "Settlement Agreement"), for which the Court granted preliminary approval in an Order entered on April 13, 2021. *See* Dkt. No. 44. Specifically, the Plaintiffs, without opposition from Defendants Trans Express Inc., ("Trans Express"), National Express LLC ("National Express"), and National Express Transit Corporation ("National Express Transit"), (collectively referred to herein as "Defendants"), ask that the Court enter the proposed Order and Judgment, attached as Exhibit A to the Notice of Motion, and grant final approval of the Settlement. Class Counsel's request for an award of attorneys' fees and costs is separately submitted.

On April 13, 2021, the Court entered an order that: (i) granted preliminary approval of the proposed class action Settlement in this case, (ii) provisionally certified the class, (iii) found that supplemental jurisdiction existed for Plaintiffs' and Class Members' state law claims – and that Participating Class Members will release state law claims and FLSA claims, (iv) appointed The Law Office of Christopher Q. Davis, PLLC as Class Counsel, and (v) approved the Notice of Proposed Class Action Settlement ("Notice"). *See* Dkt. No. 44.

Since that time, Class Counsel and Defendants' Counsel worked with the designated claims administrator, RG/2 Claims Administration ("RG/2" or the "Claims Administrator") to issue the Court-approved Notice to the approximately 1,043 identified Class Members. *See* Declaration of Christopher Q. Davis, (hereinafter, "Davis Decl.") ¶¶ 78-83. The Claims Administrator mailed a Notice to all identified Class members and provided Class members the opportunity to exclude

themselves by submitting an Opt-out Statement, or if they chose to participate, were provided an opportunity to inform this Court that they had an issue with the Settlement by filing an objection. *Id.*

As set forth in greater detail below, the response to the Notice was very positive—as of August 16, 2021, only one (1) Class Member attempted to opt out of the Settlement although the request was untimely as it was postmarked after the deadline. No Class Member has objected to the Settlement. Both of these facts weigh heavily in favor of final approval. *See In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement (citing *Seagoing Unif. Corp. v. Texaco, Inc.*, No. 84 CIV. 1730, 1989 WL 129691 (S.D.N.Y. Oct. 24, 1989)). Additionally, this settlement satisfies all the pertinent criteria for final approval under *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F. 3d 43 (2d Cir. 2000).

For these reasons, Class Counsel, on behalf of the Participating Class Members, and without objection from Defendants, respectfully requests that the Court grant the instant motion.[1]

## I. <u>LITIGATION HISTORY</u>

### A. <u>Factual and Procedural History</u>

On or about July 12, 2019, Plaintiffs filed the above-captioned class and collective action lawsuit on behalf of current and former Bus Drivers and Dispatchers by and through Class Counsel, The Law Office of Christopher Q. Davis, PLLC, asserting claims against Defendants for unpaid

[1] All defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement executed by the Parties and filed with this Court. *See* Ex. 1, Dkt. No. 41; *See also* Davis Decl. Ex. 1.

straight and/or overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and under the New York Labor Law ("NYLL") (the "Litigation"). *See* Dkt. Nos. 1-2; Davis Decl. at ¶ 3. Plaintiffs also alleged that Defendants violated the NYLL by failing to provide Plaintiffs with accurate wage statements and wage notices. *Id*.

The Complaint sought damages for (i) the Bus Drivers' claims for unpaid overtime premiums for hours worked over 40 due to Defendants' alleged misclassification of Bus Drivers as exempt under the Motor Carrier Act Exemption; (ii) the Dispatchers' claims that Defendants allegedly inappropriately paid a straight time rate, as opposed to time and a half rate, for overtime hours worked; (iii) claims for statutory penalties due to Defendants' alleged violation of New York State wage statement and notice requirements, and (iv) attorneys' fees and costs, interest, and liquidated damages. *Id.* at ¶ 4.

Shortly after the Named Plaintiffs filed their Complaint, the Defendants invited Plaintiffs to participate in a previously scheduled private mediation. *Id.* at ¶ 5. This mediation involved plaintiffs from two (2) other class action complaints and as well as the Secretary of the Department of Labor ("DOL"), which also filed a Complaint on behalf of Drivers employed during the FLSA's statute of limitations alleged in the DOL's complaint. *Id.* at ¶ 6; *see also Williams v. Trans Express Inc.*, Case No. 19-CV-1857 ("*Williams")*; *Landi v. Trans Express Inc., et al*, Case No. 190-CV-02715 ("*Landi"*); and *Walsh, Secretary of Labor, United States Department of Labor v. Trans Express, Inc.*, Case No. 19-CV-1423. The private mediation took place on August 22, 2019 with Stephen P. Sonnenberg, Esq., an experienced class and collective actions mediator. *See* Davis Decl. at ¶ 7. In advance of the mediation and settlement conferences, the Parties agreed to the scope of mediation-related discovery, which included, but was not limited to: (1) Defendants' production of electronically maintained time and payroll data and select contracts with

Defendants' customers, and (2) Plaintiffs' production of documents including pay stubs, policy documents, and paper forms Bus Drivers completed. *Id.* at ¶ 8.

The mediation was unsuccessful. *Id.* at ¶ 9. However, it was during this mediation that it became clear that the *Pulliam* matter was the only one capable of proceeding on behalf of the six-year Rule 23 Class for claims for unpaid wages and statutory violations under the NYLL. *Id.* at ¶ 10. This was because Mr. Pulliam was the only plaintiff with claims that were not arguably covered by the DOL's lawsuit i.e. Pulliam had worked as a Driver at times during the NYLL's longer six-year limitations period. *Id*.[2]

On September 26, 2019, Defendants filed their Answer to the Complaint. *Id.* at ¶ 11. Thereafter, on January 23, 2020, the parties for all four (4) matters again convened for a settlement conference with Your Honor. *Id.* at ¶ 12. Settlement for each of the four matters was discussed separately with Your Honor, as they each presented unique factual and legal issues as well as unique levels of litigation risk in proceeding. *Id.* at ¶ 13. For example, Plaintiffs in this matter, unlike the other two private litigations, were able to allege NYLL minimum wage overtime claims, NYLL statutory wage statement claims, as well as the 6-year limitations period under the NYLL. *Id.* at ¶ 14. Additionally, despite the fact that the DOL claimed to have jurisdiction over their claims, the DOL agreed to allow the plaintiffs in the *Landi* and *Williams* matters to negotiate individual settlements.[3]

After the first in-person settlement conference with the Court, the parties were again unable to reach an agreement; however, Plaintiffs and Defendants in this matter were committed to settlement and believed the settlement conferences were beneficial in bringing the parties closer

[2] The U.S. DOL is only capable of representing individuals for purposes of their FLSA claims, not their NYLL claims.
[3] With the assistance of the Court, the plaintiffs in *Landi* and *Williams* have settled their cases individually and separate and apart from this settlement agreement and as such, they are excluded from the Class definition in this Settlement.

together. *Id.* at ¶ 15. As such, on July 20, 2020, the parties participated in a second settlement conference with Your Honor—this time via telephone due to COVID-19 restrictions—where the parties in all four related matters, including this one, accepted Your Honor's recommended monetary settlement amounts. *Id.* at ¶ 16. The parties next turned to negotiations of various non-monetary terms. *Id.* at ¶ 17.

On August 24, 2020, the parties participated in a third settlement conference with Your Honor, again via telephone, to assist and narrow the scope of any remaining non-monetary terms. *Id.* at ¶ 18. After this final settlement conference, the parties papered the terms and conditions of the Settlement Agreement now before the Court for final approval. *Id.* at ¶ 19.

**B. Overview of Investigation and Discovery**

After being contacted by the Named Plaintiffs and other putative class members, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. *Id.* at ¶ 20. Class Counsel focused their investigation and legal research on the underlying merits of the Plaintiffs' claims and any potential affirmative defenses, the damages to which they were entitled, and the propriety of proceeding on a class basis. *Id.* at ¶ 21. Prior to filing the Complaint, Class Counsel had conducted multiple in-depth interviews with the Named Plaintiffs and putative class members to determine the hours that they worked, the wages they were paid, their compensation structure, the nature of their duties and responsibilities (including the frequency of inter-state travel), and other information relevant to their claims. *Id*. at ¶ 22.

After interviewing the Named and putative class members, Class Counsel reviewed documents produced collectively by and between Plaintiffs and Defendants, including but not limited to pay stubs, timesheets, employee handbooks, service contracts, time and payroll data, and route information dating back to March 2017. *Id*. at ¶ 23. Based on the information provided by the Named and putative class members, other non-party witnesses, and Class Counsel's review

of Defendants' productions, Class Counsel was able to fully assess Plaintiffs' litigation risks related to the legal claims as well as risks related to proceeding as a class and/or collective action. *Id*. at ¶¶ 23-27.

As set forth above, in preparation for the initial mediation and subsequent settlement conferences, Plaintiffs' Counsel reviewed and analyzed large amounts of time and payroll data for Drivers and also analyzed service contracts, policy documents and other documents received from the Plaintiffs and Defendants. *Id.* at ¶ 23. In addition to reviewing those documents, Class Counsel continued to conduct factual investigations of Plaintiffs' claims through detailed interviews of the Named and Opt-in Plaintiffs focusing on how drivers were assigned their routes, the frequency and predictability of inter-state travel, and details on hours worked. *Id.* at ¶ 24. Plaintiffs' Counsel also conducted extensive legal research on matters such as factually similar cases involving the MCA exemption, class certification standards and risk, decertification standards and risks, summary judgment risks, risks attendant to off-the-clock litigation, Defendants' other anticipated defenses, and Plaintiffs' damages. *Id.* at ¶ 25. Class Counsel was able to use the documents produced from the Plaintiffs and Defendants to analyze factual issues, evaluate class-wide liability and risks, and calculate and extrapolate a damages calculation for the entire Class period. *Id.* at ¶¶ 26-34. Based on the information provided by the Named and Opt-in Plaintiffs and Class Counsel's review of Defendants' productions, Class Counsel was able to fully assess Plaintiffs' litigation risks related to the application of the MCA exemption and risk related to proceeding as a class action. *Id.*

Following this extensive work, the Parties agreed to engage in settlement discussions first through a private mediator and then continued discussions with the assistance of this Court and counsel well-versed in wage and hour class and collective litigation. *Id.* at ¶ 42-54. After multiple

formal settlement conferences as well as continued negotiations by and between counsel, the Parties reached a settlement of the Class claims. *Id.* at ¶ 50.

### C. **Settlement Negotiations**

As set forth above, the Parties engaged in a private mediation session under the direction of mediator, Stephen P. Sonnenberg, Esq., an experienced class action mediator, as well as numerous settlement conferences with Your Honor. *Id.* at ¶ 42.

During the settlement conferences, the Parties each presented their legal and factual assessments of the case and discussed the merits of each Parties' positions. *Id.* at ¶ 44. Specifically, Class Counsel produced data for the Named and Opt-in Plaintiffs, including but not limited to pay stubs, time records, and relevant correspondence, which Plaintiffs' Counsel was able to use to extrapolate a damages calculation. *Id.* at ¶ 45. Defendants, during the mediation, provided information regarding timekeeping data for the some of the Plaintiffs. *Id.* at ¶ 46.

After multiple mediation/settlement conferences, the Parties were able to reach a resolution of this matter. *Id.* at ¶ 50. Class Counsel concluded after numerous settlement conferences and prolonged back and forth negotiations between counsel that an early resolution was best for the class because there were serious litigation risks, particularly related to the applicability of the MCA Exemption and that the DOL was already seeking to obtain FLSA overtime wages on behalf of a large portion of the class. *Id.* ¶ 47. For example, the Plaintiffs acknowledged that their routes were assigned somewhat randomly, and they could have been asked to drive out-of-state on any given day, which would weigh in favor of the applicability of the MCA exemption.[4] *Id.* at ¶ 48. As such,

[4] The MCA exemption applies to "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" of the Motor Carrier Act. 29 U.S.C. § 213(b)(1). In *Morris v. McComb*, the Supreme Court held that the MCA exemption applied to all of Morris's drivers (43 drivers) despite the fact that, collectively, "only about 4% of their time and effort has been, or is likely to be, devoted to services in interstate commerce" and even though some had

during the settlement negotiations, Class Counsel considered these litigation risks in valuing each of the Class claims. *Id.* at ¶ 49.

As a result of the mediation and settlement conferences, the Parties reached an agreement as to the resolution for the Class claims, as defined in the Complaint, the terms of which are set forth in the Settlement Agreement. *Id.* at ¶ 50; *see also* Ex. 1 attached to Davis Decl. The Parties' Settlement Agreement in this case as well as the settlements in *Williams* and *Landi* are subject to and conditioned upon final approval by the Court of the terms of the settlement agreements in all three cases. If the settlements in any of those three cases is either unaccepted or not approved by the Court for any reason, then the settlements in all three cases will be void. In that instance, no settlement payments will be issued, and the Parties in this matter and the parties in *Williams* and *Landi* shall return to their respective positions on the day before this Settlement Agreement was executed.

In Plaintiffs' Counsel's estimation and weighed in light of the attendant risks presented by litigating this matter further, the settlement reached represents a meaningful percentage of the recovery that the Plaintiffs would have achieved had they achieved conditional class certification, defeated Defendants anticipated motion(s) for decertification, prevailed on all of their claims at trial, survived an appeal, and sought to enforce and collect upon a judgment. *Id.* at ¶ 51. More

---

never driven across a state line while others would do so only sporadically over the course of a year. 332 U.S. at 431. *See also*, *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 874-75 (3d Cir. 2015) (affirming summary judgment for employer where 6.9% of trips were interstate.) Additionally, the applicable regulations explicitly hold the MCA exemption "does not require that the individual be engaged in such work at all times." 29 CFR § 782.3. "As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is. . . or is likely to be . . . called upon in the ordinary course of his work to perform, either regularly or from time to time, [transportation in interstate commerce], he comes within the exemption in all workweeks when he is employed at such job." 29 CFR § 782.2(b)(3) (emphasis added). *See also Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 874-75 (3d Cir. 2015) (affirming summary judgment for employer where 6.9% of trips were interstate.); *Walters v. Am. Coach Lines Of Miami, Inc.*, 575 F.3d 1221, 1229 (11th Cir. 2009) (intrastate bus runs between cruise ship terminals and various transportation hubs likewise qualified as interstate because it was merely a segment of a continuous interstate journey); *Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1217 (11th Cir. 2011) (same).

specifically, based on Class Counsel's damages assessment of the underpayment, the Plaintiffs' recovery on the dollar calculated on the Gross Settlement is approximately 75 cents ($0.75, in certain instances up to $0.80) on the dollar for their alleged underpayment (exclusive of liquidated damages under the FLSA and penalties under NYLL). *Id.* at ¶ 52.

At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. *Id.* at ¶ 53. As stated in the legal argument below, the settlement reached in this complex wage and hour class action constitutes a reasonable compromise of a bona fide dispute involving a myriad of vigorously contested legal and factual issues. *Id.* at ¶ 54.

### D. Plaintiffs' Unopposed Motion for Preliminary Approval

On January 8, 2021, the Named Plaintiffs, on behalf of the Class, submitted an Unopposed Motion for Preliminary Approval of the Settlement, scheduling of a final fairness hearing, and related relief, including, appointment of Plaintiffs' Counsel as Class Counsel and approval of the proposed Notices. *See* Dkt. No. 40. On April 13, 2021, the Court granted the Plaintiffs' Unopposed Motion for Preliminary Approval, appointed The Law Office of Christopher Q. Davis, PLLC as Class Counsel, and appointed RG/2 Claims Administration as the third-party settlement claims administrator. *See* Dkt. No. 44. The Court also set a final approval hearing on August 31, 2021 to address the question of whether the Settlement Agreement should be approved as fair, reasonable, and adequate. *Id.*

### E. Defendants Complied With The Class Action Fairness Act (CAFA) Notice Requirements

On February 3, 2021, CAFA notices along with the requisite exhibits were sent to the U.S. Attorney General and to the attorneys general of 19 states. See Declaration of Joseph K. Mulherin, ¶ 3, Ex. A. After this Court entered the Parties' Stipulation to Further Modify Class Action Notice (Dkt. No. 49), Defendants sent an updated CAFA notice with updated exhibits to

the attorney generals of 26 states on February 10, 2021 and to the U.S. Attorney General on February 19, 2021. *Id*. ¶ 4, Ex. B. The second CAFA notice mailing was sent to seven (7) additional state attorneys general because Defendants ran a skip trace and discovered that Class Members were living in additional states. *Id*. Significantly, the U.S. Attorney General and the attorneys general to whom the notice was mailed have not filed any objections or otherwise raised any reason to delay approval of the settlement.[5] *Id.* at ¶ 5.

### F. Summary of the Notice and Claims Administration Process

RG/2 Claims Administration ("RG/2") served as the Settlement Administrator. *Id*. at ¶ 77. On April 27, 2021, RG/2 received an electronic file from Defendants' Counsel, containing the names, known contact information, social security numbers, employee identification numbers and employment dates for the present and former employees of Defendants who were employed as a bus driver or dispatcher at any time between July 12, 2013 and February 7, 2021, and who were identified as Class Members (the "Class List"). *See* Declaration of Melissa E. Baldwin, attached to Davis Decl. as Ex. 2, at ¶ 5 (hereinafter, "Baldwin Decl."). Defendants also provided Quarterly Combined Withholding, Wage Reporting and Unemployment Insurance Returns for 2013, 2014

[5] Although CAFA notices were not mailed to the applicable attorneys general within 10 days following the filing of the proposed settlement with the Court, CAFA has now been satisfied because the notice was mailed more than 90 days prior to the final approval hearing. *See Adoma v. Univ. of Phx.*, Inc., 913 F. Supp. 2d 964, 972-73 (E.D. Cal. 2012) (collecting cases; finding that "even if defendants are late in serving notice to state and federal officials, class members may not exempt themselves from a settlement so long as at least 90 days elapse between service of the notice and entry of an order granting final approval of the settlement"); *Jakosalem v. Air Serv Corp.*, No. 13-cv-05944-SI, 2015 U.S. Dist. LEXIS 117235, at *2-3 (N.D. Cal. Sep. 2, 2015) ("Courts have found that CAFA's notice requirements have been substantially complied with when the relevant state and federal officials have had 90 days to review the proposed settlement, even when notice was sent out late"); *Metrow v. Liberty Mutual Managed Care, LLC*, 2018 WL 6265085, at *6 (C.D. Cal. June 14, 2018); *see also Thomas v. Magnachip Semiconductor Corp.*, 2017 U.S. Dist. LEXIS 189971, at *5 (N.D. Cal. Nov. 16, 2017) ("Although Avenue Capital's notice was late, it is sufficient as long as the relevant state and federal officials have at least ninety days to review the proposed settlement."); *Jakosalem v. Air Serv Corp.*, 2015 U.S. Dist. LEXIS 117235, at *2-3 (N.D. Cal. Sep. 2, 2015) ("Courts have found that CAFA's notice requirements have been substantially complied with when the relevant state and federal officials have had 90 days to review the proposed settlement, even when notice was sent out late.").

and 2015 as a proxy for weeks worked because electronic shifts worked records for the bus drivers were not available for portions of the Class Period. *Id.* It was determined that there were 1,043 unique Class Members, of which 325 were also deemed to be members of the Department of Labor matter. *Id.* The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service ("USPS"). *Id.* at ¶ 7.

On May 24, 2021, RG/2 caused to be served on the Class Members by First Class U.S. Mail the personalized Notice of Proposed Class Action Lawsuit Settlement and Final Fairness Hearing (the "Notice"). *Id.* at ¶ 6. Each Notice was prepopulated with the Class Member's applicable position and estimated settlement payment. *Id.* at Ex. A.

The Notice advised Class Members that they could submit a written exclusion request and provided a deadline for which such needed to be submitted. *Id.* at Ex. A. The Notice also advised Class Members of their right to object to the settlement by submitting a letter directly to RG/2 by stating on or before July 23, 2021. *Id.* To date, 113 Notices were returned by the USPS as undeliverable. *Id.* at ¶ 8. Of the 113 returned, the USPS provided forwarding addresses for one (1) and the Notice was promptly re-mailed to the class member. *Id.* RG/2 performed address searches for the remaining Notices that were returned as undeliverable and was able to locate new addresses for 64 of the remaining undeliverable Notices. *Id.* Notices were re-mailed to the 64 Class Members whose addresses were located through RG/2's address searches. *Id.* Stated otherwise, 995 of the 1,043 Notices (i.e., 95.40%) have not been returned as undeliverable and therefore are presumed to have been successfully delivered to the eligible Class Members. *Id.* As of August 17, 2021, RG/2 has received only one (1) request for exclusion from the Settlement. That request for exclusion was untimely, however, as it was postmarked on August 2, 2021, and received by RG/2

on August 5, which was which was after the July 23, 2021 deadline. *Id*. at ¶ 9. RG/2 has received no objections to the Settlement. *Id*. at ¶ 10.

## II. OVERVIEW OF THE SETTLEMENT TERMS

### A. The Settlement Fund

The Parties agreed to settle this case for a Gross Settlement Fund of up to six hundred and seven thousand and five hundred dollars ($607,500.00). *See* Ex. 1 at § 1. The Gross Settlement Amount will fully resolve and satisfy any claims for (i) court-approved attorneys' fees and costs to Class Counsel (inclusive of fees to the Settlement Administrator); (ii) all amounts to be paid to "Participating Class Members"; (iii) any payroll taxes owed by Defendants; and (iv) court-approved "Enhancement Awards" to Class Representatives, *i.e*. Plaintiffs Pulliam, Robinson and Badlu. *Id.* §§ 1-4. Defendants will not be required to pay more than the gross total of six hundred seven thousand and five hundred dollars ($607,500) under the terms of this Agreement. *Id*. Participating Class Members will be responsible for the employees' share of taxes on the Settlement Amount. *Id.*

In order to receive his or her settlement check issued from the Net Settlement Fund, a Class Member must be a Participating Class Member. *Id*. at § 4(a). Participating Class Members include the Named Plaintiffs and all Class Members who did not opt out of the Settlement pursuant to the Agreement. *Id.* Each Participating Class Member will receive a settlement sum referred to as their "Total Settlement Share" based on points allotted depending on their dates of employment with Defendants, which takes into consideration certain litigation risks as well as double recovery for the FLSA overtime claims being pursued on behalf of the 325 class members who will likely also be participating in the DOL's lawsuit against Defendant Trans Express and any resolution of that matter. *Id*. at § 4 (a)(i)-(iii). Any amounts allocated to Participating Class Members who do not

cash their Settlement Checks within the Acceptance Period shall, after a period of time set forth in the Settlement Agreement, be placed in a *cy pres* account chosen by the Court. *Id.* at § 13.

### B. Releases

The Settlement Agreement provides that all Participating Class Members release the Released Parties from any and all liability, damages, expenses, or costs arising under the NYLL and FLSA[6] and any other applicable state or local wage and hour law, including without limitation, claims for attorneys' fees and costs arising therefrom, for the entire Class Period (the "Covered Claims"). *Id.* at § 7.

Upon being approved by the Court for its fairness, that Rule 23 opt-out settlement is binding as a release of FLSA claims. *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 448 (5th Cir. 2016) (release of FLSA claims binding when accomplished through an opt out class action); *Stephens v. Farmers Restaurant Group*, Case No. 2019 WL 2550674, at * (D.D.C. June 20, 2019) (granting final approval to Rule 23 settlement releasing FLSA claims of absent Rule 23 class members); *Lipnicki v. Meritage Homes Corp.*, No. 3:10–cv–605, 2014 WL 923524 (S.D. Tex. Feb. 13, 2014) (same); *Kuncl v. Int'l Bus. Machines Corp.*, 660 F. Supp. 2d 1246 (N.D. Okla. 2009) (same).[7]

---

[6] For the 325 class members who are listed on Exhibit A to the complaint in Walsh, Secretary of Labor, United States Department of Labor v. Trans Express, Inc. (No. 1:19-cv-01423), the release encompasses all their Covered Claims but for their FLSA claims for the time period covered by the Walsh lawsuit.

[7] Consents to opt into FLSA cases are only designed to protect employers who may waive that protection and proceed via a Rule 23 opt-out settlement class without the need for individual consents. *Stephens v. Farmers Restaurant Group*, 329 F.R.D. 476, 489 (D.D.C. 2019) (approving release of claims in Rule 23 settlement and confirming that the FLSA "says nothing as to whether an employee may be bound by a court-approved settlement releasing FLSA claims that otherwise meets the requirements of Rule 23 and settles a bona fide dispute."); *Cotter v. Lyft, Inc.*, No. 13-04065, 2017 WL 1033527, at 2 (N.D. Cal. Mar. 16, 2017) ("In short, the statutory language does not bar the release of unasserted FLSA claims in Rule 23 class actions, and there is nothing about the purpose behind this language that should cause a district court to decline to approve such a waiver."); *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 132 (D. Colo. 2016) (approving Rule 23 opt-out settlement as satisfying FLSA); *Keeler v. AIG Domestic Claims, Inc.*, Case No. B226691, 2011 WL 6318485, at *13-15 (Cal. Ct. Appeal Dec. 19, 2011) (same); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179 (W.D.N.Y. 2005) (same).

### C. <u>Settlement Allocation</u>

Each Participating Class Member's total individual settlement sum under the Settlement Agreement shall be determined on a pro rata basis based on the points allocated to each Class Member pursuant to the formula set forth in the Settlement Agreement for their overtime claims ***plus*** a per year dollar value for the statutory wage theft prevention act claims, and is referred to in the Settlement Agreement as the Plaintiffs' "Total Settlement Share." *Id.* at § 4(a). The points will be allocated to each Participating Class Member according to specific weeks worked by each individual Class Member during the Class Period. *Id.* at § 4(a)(ii). A point value shall be determined for each individual Class Member which will then be divided by the total calculated point value for all Class Members combined. *Id.* The resulting fraction shall then be multiplied by the Net Settlement Fund to determine the amount allocated to each individual Class Member. *Id.*

The settlement shares shall be apportioned among "Participating Class Members" (i.e., those who do not opt-out of the Settlement) as follows:

i. Each Participating Class Member will be awarded $25 for every year or portion of a year that she or he worked for Trans Express, the sum of which shall be referred to as their "Individual WTPA Share" and the total of all Individual WTPA Shares shall be referred to as the "WTPA Fund."

ii. The remainder of the Net Settlement Amount, after subtracting the WTPA Fund shall be referred to herein as the "On-the-Clock Fund" and will be distributed on a pro rata basis, as follows:

a. Each Participating Class Member will receive: (1) one point for each week worked between July 12, 2013 and January 1, 2016; (2) four (4) points for each week worked between January 1, 2016 and December 31, 2017; and (3) zero (0) points for each week worked after December 31, 2017.

b. Each Participating Class Member will then be attributed his or her pro-rata share of the On-the-Clock Fund based on the total awarded points (the "Individual On-the-Clock Fund Share").

*Id.* at § 4(a). Class Members are allotted zero points for each week worked after December 31, 2017, because any claims relating to whether the Trans Express drivers listed in Exhibit A to the Secretary of Labor's lawsuit are owed overtime under the FLSA for work performed after December 31, 2017 will be decided or resolved in that separate pending lawsuit. *See* Davis Decl. at ¶ 6; *see also Williams v. Trans Express Inc.*, Case No. 19-CV-1857; *Landi v. Trans Express Inc., et al*, Case No. 190-CV-02715; and *Walsh, Secretary of Labor, United States Department of Labor v. Trans Express, Inc.*, Case No. 19-CV-1423.

Each Participating Class Member will then receive the sum of their Individual WTPA Share and Individual On-the-Clock Fund Share as their "Total Settlement Share." *Id.* However, no Participating Class Member will receive a total settlement share of less than $250. *Id.* at § 4(a)(iii).

Pursuant to the Settlement Agreement, Defendants shall transfer the Gross Settlement Amount to the Qualified Settlement Fund ("QSF") no more than fifteen (15) business days after the expiration of the time to file appeals concerning the final approval of the settlement (which, pursuant to FRCP 4(a)(1)(A), is 30 days), or within fifteen (15) business days after the resolution of any filed appeals, whichever date is later; then, the Settlement Administrator will act as escrow agent and will have the authority to release the Settlement Amount from escrow for purposes of administering the Settlement in accordance with the Settlement Agreement. *Id.* at § 12.

Each settlement payment to the Participating Class Members will be attributed as follows: fifty percent (50%) representing wage income, and fifty percent (50%) as 1099 non-wage income. *Id.* at § 6. Those payments (or portions thereof) allocated to the settlement of claims for unpaid wages (a) shall be subject to required withholdings and deductions, and so the net amounts payable will be less than the gross amounts; and (b) shall be reported in the year of payment as wage

income to the Plaintiffs on a Form W-2; the Enhancement Awards will also be reported on a Form W-2. *Id*. Those payments (or portions thereof) representing non-wage income, including liquidated damages and interest (a) shall not be subject to withholdings and deductions, and so the net amounts payable will be equal to the gross amounts; and (b) shall be reported in the year of payment as non-wage income to the Plaintiffs on a Form 1099. *Id*.

**D. <u>Attorneys' Fees and Costs</u>**

Consistent with the Settlement Agreement, Class Counsel will apply for payment from the Gross Settlement Amount for (a) litigation costs and expenses not to exceed twenty-five thousand ($25,000) and (b) attorney fees of one-hundred seventy thousand and one hundred dollars ($170,100), representing twenty-eight (28%) of the Gross Settlement Amount. *Id.* at § 14. Class Counsel's fee motion includes reimbursement of the reasonable costs and expenses of the Settlement Administrator, in the amount of thirteen-thousand dollars ($13,000.00), which is included as a line item in Class Counsel's expenses and will thus be paid out of the Gross Settlement Fund. *See* Baldwin Decl. ¶ 13. Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Class Counsel has filed, contemporaneously with this motion, a motion for approval of attorneys' fees and reimbursement of expenses.

**E. <u>Enhancement Awards</u>**

In addition to their individualized awards under the allocation formula, Class Representatives Marshall Pulliam, Sean Robinson, and Parshoo Badlu will apply for an Enhancement Awards—also known as service awards—as recognition of the services they rendered on behalf of the Class. *See* Ex. 1 § 3. The Class Representatives will apply to receive no more than thirty-five thousand dollars ($35,000) total in Enhancement Awards to be allocated as follows: $15,000 to Mr. Pulliam, $10,000 to Mr. Robinson, and $10,000 to Mr. Badlu. *Id.* In

exchange for receiving an Enhancement Award, the Named Plaintiffs will provide a full, general release of all claims (including known and unknown claims) against Defendants. *Id.* Enhancement Awards of this type are commonly awarded in complex wage and hour litigation. *See, e.g.*, *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 06 Civ. 2295, 2009 WL 5841128, at *4 (S.D.N.Y. July 27, 2009).

Enhancement Awards have been allocated to Named Plaintiffs as they have been instrumental in litigating this matter. Davis Decl. at ¶ 66-75. The allocations between the individuals differ in accordance with the level of involvement of each.

Mr. Pulliam has served the Class by remaining with this case throughout its duration, taking on substantial risk of retaliation from future employers, getting other Plaintiffs involved, and attending the mediations. *Id*. at ¶ 66-75. Additionally, Mr. Badlu and Mr. Robinson served the class by actively assisting with the litigation by attending the mediations, providing crucial information on Defendants' policies regarding overtime compensation, how routes were assigned, and other evidence corroborating overtime claims and class-wide treatment that were useful in settlement discussions. *Id*. at ¶ 72. Both in-person and via telephone calls, the Named Plaintiffs assisted in reviewing evidence, as well as provided critical information in interpreting the actual wages they were paid, the hours they worked, the nature of Drivers and Dispatchers duties and responsibilities, and other information relevant to their claims. *Id*. at ¶ 73-74. Courts commonly find service awards of this type reasonable, as they "are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained." *Damassia*, 2009 WL 5841128, at *4.

## III. <u>PLAINTIFFS SUBMIT THAT THE RULE 23 SETTLEMENT CLASS MEETS THE LEGAL STANDARD FOR CLASS CERTIFICATION</u>

Plaintiffs submit that, for settlement purposes, there is a basis to certify a class under Federal Rule of Civil Procedure 23(e). Specifically, Plaintiffs respectfully request that the Court certify the following settlement class under Federal Rule of Civil Procedure 23(a) and (b)(3) (the "Class") for purposes of effectuating the settlements:

> All persons employed by Defendant Trans Express, Inc. in either a bus driver or dispatcher job in any workweek from July 12, 2013 through March 9, 2021 [30 days from the signing of the Settlement Agreement].

Under Rule 23(a), a class action may be maintained if all the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### A. <u>Numerosity</u>

The proposed class here easily satisfies the numerosity because there are nearly 1,000 Class Members. *See* Baldwin Decl. at ¶ 7. "[N]umerosity is presumed at a level of 40 members. . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### B. <u>Commonality</u>

Plaintiffs submit that the proposed class satisfies the commonality requirement for settlement purposes, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims "need not be identical, . . . there must exist common questions of fact or law.

*Frank*, 228 F.R.D. at 181 (citing *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. Of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983)). Courts construe the commonality requirement liberally. *Id.*

Plaintiffs maintain that this case involves numerous common issues for settlement purposes. Primarily, the Named Plaintiffs and the Class Members bring the identical claims that Defendants misclassified them as exempt from overtime, failed to pay for "off-the-clock" working time, and failed to pay minimum wage overtime rates under the NYLL. Davis Decl. at ¶ 4. Plaintiffs and Class Members also claim that they did not receive accurate wage notices or statements under NYLL. *Id.*

**C. <u>Typicality</u>**

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d 372 , 376 (2d Cir. 1997) (internal quotation marks omitted).

The Named Plaintiffs contend that their claims arose from the same factual and legal circumstances that form the basis of the Class Members' claims. The Named Plaintiffs contend that all Drivers and Dispatchers employed by Trans Express were at least subject to the same common policies and practices. Dkt. No. 1 at ¶ 1. The Named Plaintiffs also contend that they share the same job titles and have the same job duties as the Class Members. *Id*. at ¶ 2. Finally, the Named Plaintiffs also claim the same general alleged injuries as the Class Members—that Trans Express misclassified them as exempt and therefore did not pay overtime premiums for overtime hours, failed to record off-the-clock work, failed to pay the minimum wage overtime rate for all overtime hours worked under the NYLL, and failed to provide them with accurate wage statements and wage notices. Davis Decl. at ¶ 4.

### D. Adequacy of the Named Plaintiffs and the Class Counsel

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05-cv-5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (citation and internal quotation marks omitted). As detailed above (see *supra* Section I), Named Plaintiffs have expended significant energy in pursuing their and the Class Members' claims by assisting Plaintiffs' counsel with the investigation of the claims and attending multiple settlement conferences. *Id.* at ¶ 66-75. Plaintiffs submit that there is no evidence or indicia that any of the Named Plaintiffs (or any Opt-In Plaintiffs) have any interests that are or would be antagonistic or at odds with the Class Members. *See Diaz v. Eastern Locating Service Inc.*, 10-cv-4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010); *Clark v. Ecolab Inc.*, 07-cv-8623-PAC, 2009 WL 6615729, at *5 (S.D.N.Y. Nov. 27, 2009).

The Named Plaintiffs also submit that their counsel also meets the adequacy requirement of Rule 23(a)(4) because of their "experience, knowledge of this area of law, work invested in identifying the potential claims in this action, and ability to commit sufficient resources to representing the class also satisfy the Rule 23(g) requirements for appointment as class counsel." *Spicer v. Pier Sixty, LLC*, 269 F.R.D. 321, 337-338 (S.D.N.Y 2010) (citing *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004)). Accordingly, reference to the Davis

Declaration supports the conclusion that counsel is qualified and the requirements of 23(a)(4) are met. *Id.* at ¶¶ 84-100. Among other things, Plaintiffs' counsel has previously been appointed as Class Counsel and co-Class Counsel in numerous class litigations in this Circuit. *Id.*

**E. <u>Certification is Proper Under Rule 23(b)(3)</u>**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Certification under Rule 23(b)(3) allows Class Members to opt out of the settlement and preserve their right to seek damages independently. This approach protects Class Members' due process rights and is consistent with the Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, which explains that due process requires an opportunity to opt out of monetary relief. 527 U.S. 815, 846-48 (1999).

i. *<u>Common Questions Predominate</u>*

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (citation omitted). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. County of Montgomery*, 227 F.R.D. 159,

173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)).

Here, the Named and Lead Plaintiffs contend that they and all the other Class Members are unified by common factual allegations—they all allege that they were subject to Defendants' wage and hour violations and that Defendants misclassified them as exempt under the MCA Exemption, resulting in unpaid wages and failure to provide accurate wage notices and/or wage statements. Davis Decl. at ¶¶ 3-4.

ii. *Class Action is a Superior Mechanism*

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *see also Amchem*, 521 U.S. at 617. Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[8]

Here, the Named Plaintiffs and the other Class Members have limited financial resources with which to prosecute individual actions with smaller individual damages amounts. To date, Plaintiffs are aware of only four other individuals who brought individual actions against Trans

[8] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." (citation omitted)).

Express regarding the wage and hour violations alleged in this matter, and they have each elected to settle individually and will not be part of the class settlement.[9]

Regarding the forum, Plaintiffs contend that concentrating the litigation in the Eastern District of New York was desirable because a significant portion of the Class members live and the alleged wrongful conduct occurred within the jurisdiction of this Court, and thus has conserved judicial resources. *See Damassia v. Duane Reade*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008).

## IV. FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(e) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

Rule 23(e) requires court approval of a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). To determine whether a settlement is substantively fair, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

### A. The Proposed Settlement is Procedurally Fair

The Settlement is procedurally fair because it was reached through arm's-length negotiations after experienced counsel had conducted substantial discovery, allowing them to evaluate the merits of Plaintiffs' claims. *See Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *4 (S.D.N.Y. Jan. 6, 2010). A "presumption of fairness, adequacy and

[9] Individual settlements have been reached in the following cases, thus warranting the exclusion of Eric Lockridge, Dinnearl Williams, Michael Landi and Xin Lin Xieand from the class. *Lockridge v. Trans Express Inc.* (No: 1:18-cv-3774); *Williams v. Trans Express Inc.* (No. 1:19-cv-01857); *Landi v. Trans Express Inc. et al.* (No. 1:19-cv-02715).

reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116*; see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the settlement was reached after Plaintiffs' counsel had conducted a thorough investigation, evaluated the claims and defenses, and negotiated extensively with Defendants. Davis Decl. at ¶¶ 20-54. Plaintiffs obtained payroll records, route assignments, policy documents, and interviewed Named Plaintiffs and putative class members, all of which enabled Class Counsel to perform accurate damages calculations. *Id*. at ¶¶ 35-41. The Parties also had lengthy discussions setting forth their legal positions. *Id.* at ¶ 44. From these sources, counsel for both Parties evaluated the strengths and weaknesses of the claims and defenses.

Following the initial production of mediation-related discovery, on or about August 22, 2019, Plaintiffs and Defendants participated in a full day mediation before Stephen P. Sonnenberg, Esq., an experienced and well-respected negotiator, which was not successful. *Id*. at ¶ 7. Thereafter, Plaintiffs and Defendants continued to engage in settlement discussions both during settlement conferences before the Court as well as by and between counsel well-versed in wage and hour litigation. *Id*. at ¶ 33. These arm's-length negotiations between counsel, involving both a well-respected neutral mediator who specializes in this area of the law as well as a veteran United States Magistrate Judge for the Eastern District of New York, creates a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116.

### B. <u>The Proposed Settlement is Substantively Fair</u>

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d at 463. The *Grinnell* factors are

(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement amount in light of the best possible recovery; and (9) the range of reasonableness of the settlement amount to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the relevant *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

i. *Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1)*

By reaching a favorable settlement before class certification proceedings, dispositive motions, or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is certainly no exception.

Although the parties have already undertaken time and expense investigating and preliminarily litigating this matter, further litigation without settlement would necessarily result in substantial additional expense and delay. Plaintiffs would move for class and collective certification, which Defendants would vigorously oppose. A full discovery schedule would be required, including the potential for expensive electronic discovery and expert discovery. And, to the extent certification was granted, Defendants would likely try to undo the certification. Moreover, preparing and putting on evidence on the pertinent factual and legal issues would consume tremendous amounts of time and resources for both sides, as well as require substantial

judicial resources to adjudicate the parties' disputes. A further trial of the damages issues, even if permitted on a representative basis (again, a disputed point), would be costly and further delay closure. In addition, even after judgment, there would the potential for appeal, thereby extending the duration and expense of the litigation. This settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.

ii. *The Reaction of the Class (Grinnell Factor 2)*

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (internal quotation marks and citation omitted). Notice of the settlement has been issued to the Class Members and the reaction has been extremely positive. To date, there have been no objections to the Settlement and only one (1) Class Member submitted a request for exclusion postmarked after the deadline to submit such. *See* Baldwin Decl. ¶¶ 9, 10. Even considering the late exclusion request, the participation rate for those members of the Class who received the Notice is 100% which is extremely high, even in an opt-out settlement. Additionally, multiple class members have called Class Counsel's offices and confirmed their support for the settlement.

iii. *Plaintiffs and Their Counsel Have Sufficient Information to Resolve the Case Responsibly (Grinnell Factor 3)*

Litigating this case through trial would require significantly more hours of discovery for both sides; however, Plaintiffs had sufficient information to negotiate the instant settlement. "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Austrian*, 80 F. Supp. 2d at 176. The proper determination is "'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Sakiko Fujiwara v. Sushi Yasuda, Ltd.*, 58 F. Supp. 3d 424, 433 (S.D.N.Y. 2014) (quoting *Warfarin*, 391 F.3d at 537);

*see also In re Austrian*, 80 F. Supp. 2d at 176 ("[I]t is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligibly make an appraisal of the Settlement.").

The parties' investigation and discovery here meet this standard. Class Counsel has conducted extensive investigation of the claims in the lawsuit, including, but not limited to, numerous interviews and follow up discussions with the Named and Opt-in Plaintiffs and the review of hundreds of pages of documents produced by Plaintiffs and Defendants. Davis Decl. at ¶¶ 20-34. Class Counsel has also reviewed and analyzed route, time and payroll data for the Class. *Id.* at 23. Finally, the Parties exchanged information and data, and debated legal arguments concerning certain highly contested points such as the applicability of the MCA exemption, engaged in extensive settlement discussions, including a private mediation session with an experienced wage-and-hour mediator and settlement conferences with the Court. *Id.* at ¶¶ 12-18.

iv. *Plaintiffs Would Face Real Risks If the Case Proceeded (Grinnell Factors 4 and 5)*

Although the Named Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). A trial on the merits would involve significant risks.

With respect to liability, while the Named Plaintiffs are confident in their ability to prove their case, Defendants have several defenses which could defeat the Named Plaintiffs' effort to establish liability. Defendants' primary defense is that both Drivers and Dispatchers are subject to the MCA Exemption, and thus not eligible for any overtime compensation. Davis Decl. at ¶ 28. If Defendants are successful and a Court holds that the MCA exemption applies to all weeks worked,

Plaintiffs would not be able to recover any overtime damages under the FLSA or under the NYLL, which applies the federal exemption. *Id*. Additionally, even if the exemption is found not to apply, Defendants believe that they will be able to show the amount of off-the-clock time worked by Drivers was either significantly less than Plaintiffs allege or even non-existent for some Class Members, which would reduce the value of any claims. *Id.* at ¶ 30. Obviously, another defense is that if employees were paid, there is no liability for any off-the-clock work. *Id.* at ¶ 31. Defendants allege that discovery will reveal that Class Members would clock in before starting safety checks and as such the time was compensated. *Id.* Finally, the wage statement and notice violation claims could, in effect, live or die with the viability of Plaintiffs underlying overtime claims and as such, are subject to similar risks. *Id.* at ¶ 32.

Alternatively, Plaintiffs believe they will be able to establish liability and avoid any MCA Exemption by looking at four (4) month snapshots in which the Drivers did not drive out of state and applying damages during such weeks. *Id.* at ¶ 29. Defendants point to Supreme Court's decision in *Morris v. McComb*, 332 U.S. 422 (1947) and believe that they will win summary judgment on a class-wide basis due the extent of interstate driving by the drivers. As such, Plaintiffs acknowledge the considerable risks in continuing with litigation and the significant value provided by settling.

Since both parties are well represented by highly competent counsel who specialize in complex wage and hour litigation, they would each pursue all such potential claims and defenses and raise multiple strategic and procedural issues in the course of the litigation, making the outcome of Plaintiffs' claims uncertain and the period of litigation lengthy, weighing strongly in favor of final approval of the Settlement.

v. *Establishing a Class and Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6)*

The Named Plaintiffs similarly believe that they could obtain class certification in contested proceedings; however, they recognize that this issue also presents a considerable risk.

Should the Court deny final approval for the settlement, Defendants will contend that contested litigation of the class claims will not be manageable or appropriate. The Named Plaintiffs believe this case is well suited for class or collective treatment; however, they have not yet moved for preliminary FLSA certification or Rule 23 class certification, and any such motion(s) would be heavily contested. Further, because of the DOL's currently pending case, any potential FLSA collective action would be limited by the Secretary's litigation. *See* 29 U.S.C. § 216(c) (the right of an employee to bring a private right of action to recover unpaid overtime wages and liquidated damages, and for any employee to become a party plaintiff to any such action, terminates only upon the filing of a complaint by the Secretary of the United States Department of Labor that seeks recovery for the same unpaid overtime compensation or liquidated damages). However, "an individual employee's right to bring an action pursuant to § 216(b) only terminates once that employee ***is named*** in a complaint filed by the Secretary of Labor pursuant to § 216(c) or § 217." *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 460-61 (E.D.N.Y. 2012) (emphasis added) (allowing any former or current employees not included in the Secretary's listed names in its action who choose to join private action to pursue claims for the entire statutory time period in the private action). As such, while Plaintiffs and any collective members who were not specifically named as plaintiffs in the DOL action against Defendants maintain their private right of action for recovery of wages or overtime under the FLSA (and can release those claims in this settlement), the DOL's first filed complaint adds the possibility for additional litigation risk.

Further, the Named Plaintiffs claims may of course continue to the extent they seek recovery of wages or overtime alleged to have been wrongfully withheld under state-law, since such claims are not covered by the present DOL action. *See e.g., Ahmad v. Daniyal Enterprises*, LLC, No. 2:14-CV-1142 2015 WL 6872481, at *2 (D.N.J. Nov. 9, 2015) (allowing plaintiff's state law claims to continue). The Named Plaintiffs believe their claims will no doubt be certified as a NYLL class action under Fed. R. Civ. P. 23 based on uniform unlawful policies – namely, misclassifying Plaintiffs as exempt from overtime and therefore not paying proper overtime premiums. Notably, the Named Plaintiffs' theory of certification is based on a common practice of Defendants, namely misclassifying Drivers and Dispatchers, all of whom perform the same duties, as exempt from overtime. *See, e.g., Perez v. Allstate Ins. Co.*, 11-cv-1812, 2014 WL 4635745, at *15 (E.D.N.Y. 2014) (granting Rule 23 certification in a misclassification case where plaintiffs all had the same job duties and were subject to same policies). Plaintiffs will also argue that under the NYLL, the MCA exemption does not apply to minimum wage overtime claims, and thus, irrespective of any misclassification analysis, all Class Members are entitled to time and a half the minimum wage for all hours worked, which was not provided.

Alternatively, Defendants will argue that certification is improper because resolution of the exemption question is not conducive to collective proof or capable of class-wide resolution because it will require individualized examinations of each plaintiff's daily route assignments and hours worked. *See Myers v. Hertz Corp*., No. 02-CV-4325, 2007 WL 2126264, at *4–5 (E.D.N.Y. July 24, 2007) (finding lack of commonality because the key issue, whether employees were misclassified as exempt, required individualized proof), *aff'd*, 624 F.3d 537, 547 (2d Cir. 2010). Defendants will argue that individual issues will predominate because the Court would need to consider each plaintiff's daily route assignments and other individual duties assessments to

determine if they were misclassified. S*ee Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 188–189 (S.D.N.Y. 2010) (finding that individual, rather than common, issues would predominate because an "individualized assessment" of each employee's situation was necessary to determine if that particular employee was misclassified).

In short, while the Named Plaintiffs continue to believe these claims could proceed on a class basis, they recognize that Defendants have presented arguments that pose a significant risk to the chances for certification, and this favors final approval.

vi. *Defendants' Ability to Withstand a Greater Judgment Is Not at Issue (Grinnell Factor 7)*

While Defendants' ability to withstand a greater judgment is currently not at issue, due to the COVID-19 pandemic's impact on the Defendants' business, this issue may become more relevant if this settlement fails and the parties are forced into a continued and prolonged litigation. Even so, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian*, 80 F. Supp. 2d at 178 n.9.

vii. *The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)*

Class Counsel has determined that this case presents significant risks that militate toward substantial compromise. Defendants have agreed to settle this case for a substantial amount, up to $607,500. Ex. 1 at § 1. The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if the Plaintiffs succeeded on all claims at trial and such a result survives an appeal. In Class Counsel's estimation, the settlement represents a meaningful percentage of the recovery that the Class Members would have achieved had they prevailed on all their claims, survived an appeal, and sought to enforce and collect upon a judgment. Davis Decl. at ¶ 51.

The determination of whether a settlement amount is reasonable "does not involve use of

a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement—a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Here, each Participating Class Member will receive a meaningful settlement payment based upon his or her length of time working for Defendants during the Class Period while also considering factors such as (1) litigation risks associated with Defendants' arguments, and (2) recovery that certain Class Members are receiving from the DOL. Ex. 1 at § 4. As explained in detail above, the amount that each Participating Class Member will receive reflects a careful balancing of the strengths of the underlying claims and the very real risks that certain of those claims would not ultimately prevail. Davis Decl. at ¶¶ 27-34. Defendants have insisted, and will continue to insist, that they are not liable to Plaintiffs on any of the claims. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the Plaintiffs respectfully submit that the settlement amount is reasonable.

As set forth above, based on Class Counsel's damages assessment of the underpayment, the Plaintiffs' recovery on the dollar calculated on the Gross Settlement is approximately seventy-five cents ($0.75, in certain instances up to $0.80) on the dollar. Davis Decl. at ¶ 52. Specifically, Class Counsel engaged a damages expert to conduct a detailed review of the sample route data provided by Defendants to determine the number of overtime hours worked by Class Members, albeit excluding four (4) month periods after interstate route occurred. *Id* at ¶ 37. Based on this, Plaintiffs' expert was able to calculate unpaid overtime of approximately $800,000 using a half-

time rate[10] and extrapolate it out for the years in which there were damages not covered by the DOL matter before this Court. *Id.* at ¶ 40. In addition, there were damages for unpaid minimum wage overtime, so this represents a significant portion of the Plaintiffs' alleged underpayment (exclusive of liquidated damages under the FLSA and penalties under the NYLL). *Id.* at ¶ 38.

Accordingly, all the pertinent *Grinnell* factors weigh in favor of issuing final approval of the settlement. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), final approval is appropriate.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the Order granting final approval of the settlement, subject to and conditioned on the concurrent approval of the settlements in *Landi* and *Williams*. (Class Counsel's request for an award of costs and fees is separately submitted, and Defendants do not oppose that request.)

Dated: August 17, 2021
New York, New York

Respectfully submitted,

By: /s/

Christopher Q. Davis (CD-7282)
Rachel M. Haskell (RH-8248)
**The Law Office of Christopher Q. Davis, PLLC**
80 Broad Street, Suite 703
New York, New York 10004
Telephone: (646) 430-7930

*Attorneys for Plaintiffs and the Class*

[10] A half-time rate was used because the Plaintiffs were paid a flat daily rate for all hours worked and as such were only underpaid their half-time rate.